IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

LILLIAN SPANN,

    Plaintiff,

v.                                              CASE NO. 1:09-cv-00199-MP-AK

MICHAEL J ASTRUE,

    Defendant.

_____/

## **O R D E R**

This action is brought pursuant to 42 U.S.C. § 405(g) of the Social Security Act (Act) for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for supplemental security income benefits (SSI) filed under Title XVI of the Act.

Upon review of the record, the Court concludes that the findings of fact and determinations of the Commissioner are supported by substantial evidence and the decision of the Commissioner is affirmed.

### **A.**    **PROCEDURAL HISTORY**

Plaintiff filed an application for SSI on September 29, 2004, alleging a disability onset date of September 2, 2003, because of spinal problems, hepatitis C, neuropathy, ovarian cysts and tumors, and arthritis. Plaintiff petitioned for a hearing before an administrative law judge (ALJ), who conducted a hearing on March 13, 2008, and entered an unfavorable decision on May 19, 2008. The Appeals Council denied Plaintiff's request for review, thus making the decision of the ALJ the final decision of the Commissioner. This action followed.

B. **FINDINGS OF THE ALJ**

The ALJ found that the Plaintiff had severe impairments of lumbar facet syndrome with spondylolisthesis; obesity; history of gout; hypertension; hepatitis C, asymptomatic; gastroesophageal reflux disorder; major depressive disorder (bipolar); post-traumatic stress disorder; and ethanol abuse (which Plaintiff says she has reduced to two beers a week). He also found that she had non-severe disorders of allergies in the hands and feet, questionable carpal tunnel syndrome, and questionable hammertoes. None of these impairments met the listing requirements. Thus, the ALJ found her able to perform a restricted range of light work in that she cannot perform complex or detailed tasks because she had moderate difficulty with concentration, persistence and pace. Utilizing the services of a vocational expert at the hearing, the ALJ asked whether the reduced range of light work would preclude all work and the expert testified that with the limitation to unskilled (no detailed or complex tasks) and the exertional limitations supported by the record, she could perform all unskilled sedentary jobs and a wide range of light work.

C. **ISSUES PRESENTED**

Plaintiff argues that the ALJ erred in not posing a hypothetical to the vocational expert that included all of her mental and physical limitations, specifically the only mental limitation that the ALJ included was with regard to her concentration which he found limited her to no detailed or complex tasks, but that the evidence supported moderate limitations in her abilities to complete a regular workday and workweek and to interact with others.

The government responds that the record showed that Plaintiff did not follow prescribed treatment with regard to her mental limitations, did not seek treatment for 2 ½ years after her

onset date, reported relief from medication, and her physical limitations were exaggerated and found to be mild conditions upon objective testing.  Thus, the hypothetical posed to the vocational expert was properly supported by the record and the ALJ's findings with regard to her credibility as to her pain and limitation, and no error occurred.

The issue thus presented is whether the Commissioner's decision that Claimant is not disabled is supported by substantial evidence in the record and decided by proper legal standards.

**D.**     **STANDARD OF REVIEW**

Title 42 U.S.C. § 405(g) sets forth the standard of review for this court.  The Commissioner's decision must be affirmed if it is supported by substantial evidence and the correct legal standards have been applied.  Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997).  Findings of fact by the Commissioner which are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g). Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). "Substantial evidence" has been defined to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted) (per curiam).  It is more than a scintilla, but less than a preponderance.  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted).  The court may not reweigh the evidence or substitute its judgment for that of the Commissioner.  Wolfe v. Chater, 86 F.3d 1072, 1076 (11th Cir. 1996).  It must determine only if substantial evidence supports the findings of the Commissioner.  See Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987) (per curiam).  Even if substantial evidence exists which is contrary to the Commissioner's findings, where there is substantially supportive evidence of the

Commissioner's findings, the court cannot overturn them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Unlike the deferential review accorded to the Commissioner's findings of fact, his conclusions of law are not presumed valid. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). The Commissioner's failure to apply correct legal standards or to provide the reviewing court with an adequate basis for it to determine whether proper legal principles have been observed requires reversal. Id. (citations omitted).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairment?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent any other work?

A finding of disability or no disability at any step renders further evaluation unnecessary. Plaintiff bears the burden of establishing a severe impairment that keeps him from performing

his past work. If Plaintiff establishes that his impairment keeps him from his past work, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given Plaintiff's impairments, Plaintiff can perform. <u>Chester v. Bowen</u>, 792 F.2d 129, 131 (11th Cir. 1986); <u>MacGregor v. Bowen</u>, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, Plaintiff must prove that he cannot perform the work suggested by the Commissioner. <u>Hale v. Bowen</u>, 831 F.2d 1007, 1011 (11th Cir. 1987). It is within the district court's discretion to affirm, modify, or reverse a Commissioner's final decision with or without remand. 42 U.S.C. § 405(g); <u>Myers v. Sullivan</u>, 916 F.2d 659, 676 (11th Cir. 1990).

**E.    SUMMARY OF CLAIMANT'S RELEVANT MEDICAL HISTORY**

Plaintiff has a long history of alcohol abuse and has been warned repeatedly to stop drinking. (R. 191-192, 197-200, 226-230, 253-263, 269-278, 285-295, 313-331, 332-345, 375-392). This may be the primary cause of her lower cognitive functioning. (R. 163).

Her continued drinking compromised her treatment for hepatitis C and her gynecological treatment for cysts and fibroid tumors. (R. 514-516, 455-456).

She did not follow up with mental health treatment, often missing appointments and failing to take medication as prescribed. She did not even begin with Suncoast Center for Community Mental Health until March 9, 2006, complaining of depression, insomnia, and auditory hallucinations. (R. 424-425). This was over 2 years after her alleged onset date. She was seen again on March 29, 2006, when she reported excessive alcohol use, auditory hallucinations, and depression. (R. 420). She was not seen again until November 27, 2006 when she reported doing well on medication, but she had significant problems when she was off it. (R.

413-420). She agreed to keep her appointments and stay on her medication, (R. 420), but the only other records concerning mental health treatment are July 20, 2007, and September 19, 2007, for medication refills. (R. 698-699).

Although a mental health evaluation dated December 13, 2004, ordered by the Administration, revealed several past traumas (sexual and physical assault), Plaintiff sought no mental health treatment for these incidents which had occurred years previous to her onset date. (R. 570-572). Dr. Edith Dalton believed these experiences severely impaired her ability to function socially and to work with others.

Likewise, it does not appear that she followed treatment plans suggested for her back and neck pain either. Treatment at Tampa Bay Orthopedic Specialists began in February 2005, resulting in a diagnosis of lumbar and cervical facet syndrome with a treatment plan for physical therapy and anti-inflammatory medication. (R. 491-492). She did not mention that she took any medication for her back and neck pain after the Darvocet was discontinued, and there are no physical therapy notes in the record.

Dr. Gupta's treatments as well were conservative, (R. 349, 354, 362, 397-398, 400-403, 409, 411), although he did give her a number of cortisone injections. (R. 350-352, 355, 357, 393, 681, 683, 686, 693, 695-697). Objective tests, including MRI, x-rays and EMG results indicated only moderate carpal tunnel syndrome, with no evidence of cervical radiculopathy (R. 400), and spondylolisthesis with moderate forminal stenosis, diffuse central disc bulging at L5-S1 (R. 403), and degenerative disc disease at L4-L5. (R. 411). Her studies were otherwise normal (R. 399-411), and it was suggested that she perform a number of strengthening exercises and other conservative care based on these studies. (R. 404).

She sought frequent treatment for complaints of foot and back pain from the Community Health Center, but she often smelled of alcohol at her appointments and was told to quit drinking and smoking. There were frequent skipped appointments. (R. 494-512).

None of the above noted treating sources suggested that she could not work or had physical limitations that would affect her ability to work.

There is a note written on a prescription pad for Dr. Lee Kadosa at the American Spine & Pain Rehabilitation Institute in Tampa, Florida, dated September 1, 2004, which states, "Above [indecipherable] patient is totally and permanently disabled." (R. 677). Another note written similarly dated June 9, 2004, states, "Can't lift more than 15 lbs." (R. 678). He does not explain the basis for these conclusions.

Dr. Christopher Davey prepared a Disability Report on January 11, 2005, wherein Plaintiff reported that she smoked a few cigarettes and drank "a little beer." (R. 607-612). He found full range of motion, normal motor strength and normal sensory motor reflexes, although he said she gave "sub-optimal effort and exaggerated her symptoms." (R. 608). He also reported that she "walks with little hops, holding onto the walls," which he found to be "symptom magnification." (R. 608). He noted that she exhibited "Very poor ROM, but improved when she is distracted, i.e. she could hardly move her head when asked, but easily turns her head when spoken to." (R. 609).

A Psychiatric Review Form completed on January 25, 2005, assessed her for Affective Disorders, Anxiety Disorders, and Substance Abuse Disorders, and found her only moderately limited in her ability to concentrate, and maintain regular attendance including completing a regular workday and workweek. Moderate limitations were also noted in the ability to respond

appropriately to changes in work setting. (R. 552-569). Another Psychiatric Review Form completed on May 24, 2005, found insufficient evidence for any mental health impairment because there were no mental health treatment records of record and she had not returned calls requesting information. (R. 470-481).

A Physical RFC dated May 29, 2005, found her able to lift 10 to 20 pounds, and sit, stand and walk about 6 hours out of an 8 hour day. (R. 483-490). Another RFC dated February 9, 2005, gave her a medium level of ability based on a recent physical exam where she exaggerated her symptomology making evaluation difficult. (R. 573-580)

F.  **SUMMARY OF THE ADMINISTRATIVE HEARING (March 13, 2008)**

Plaintiff appeared with counsel and with a vocational expert present. (R. 735-736). She quit school in the tenth grade and did not get her GED. (R. 740-741). Her past relevant work was as a housekeeper, she did not work quite a year at this job, and quit when her doctor put her on lifting restrictions. (R. 741). She has done nothing else since 2003 and her previous work experience was too remote to be considered relevant. (R. 749-751). Her problem is pain in her lower back, feet, hands, neck and shoulders, which will start as "cramps." (R. 742). She is supposed to wear splints for carpal tunnel syndrome and has inserts for her feet, but they do not help. (R. 753). She is still waiting on the treatment for hepatitis C, and she has an ovarian cyst and a fibroid tumor that cause her monthly pain. (R. 753). She used to take Darvocet for the back, neck and shoulder pain, but Dr. Gupta took her off that and began injections, which have not worked. (R. 756). She has physical therapy and home exercises to strengthen her back and hands. (R. 757). Her depression affects her by making her cry about twice a week, she isolates and sits alone in the dark, she does not socialize, and her appetite is low. (R. 759). She also has

no energy, low self-esteem, and lack of concentration. (R. 759-760). She sometimes hears a man and a woman talking to her, and feels like everyone is looking at her. (R. 762). She continues to be treated at Suncoast Mental Health and takes medication (Lexapro and Seroquel), but they do not help. (R. 764). She has cut her drinking down to two beers a week. (R. 766). If she tried to work, she would have to call in sick two or three days out of week. (R.767).

The vocational expert testified and accepted the ALJ's finding that the only past relevant work in the last 15 years was the housekeeping experience. (R. 770). This work was medium. (R. 770). Since the ALJ found her limited to light work, her past relevant work was precluded, but the expert found that she could still perform all of the sedentary base level work and a wide range of light work. The following hypothetical was posed:

> Please assume that lifting carrying, pushing, and pulling is limited to 10 pounds on occasion, five pounds frequently; the individual can sit for six hours, stand and walk for two in an eight hour day; no climbing of ladders, or scaffoldings, rope; occasional climbing of the stairs and ramps; occasional balancing, and stooping, and crouching; no kneeling or crawling; again, limited to unskilled, simple, repetitive tasks with no detailed or complex tasks involved.

(R. 771). The expert found that she could still perform all the unskilled sedentary jobs, but if her interaction with the public was limited then the food and beverage order clerk would be eliminated. (R. 772). A typical employer would accept only one missed day a month, so if she missed several days a week no employer would hire her. (R. 772-773).

## G.  DISCUSSION

At the fifth step of the evaluation process, the ALJ must determine whether a Claimant, based on his residual functional capacity, age, education and work experience, can adjust to other work in the national economy. 20 C.F.R. § 404.1520(a)(4). The ALJ may make this

determination by reliance upon the Medical Vocational Guidelines or by utilizing the services of a vocational expert. Phillips v. Barnhart, 357 F.3d 1232, 1239 (11th Cir. 2004). The Eleventh Circuit has "recognized that the grids may be used in lieu of vocational testimony on specific jobs if none of claimant's nonexertional impairments are so severe as to prevent a full range of employment at the designated level." Wolfe v. Chater, 86 F.3d at 1078, quoting Passopulos v. Sullivan, 976 F.2d 642, 648 (11th Cir. 1992). See also Foote v. Chater, 67 F.3d 1553, 1558 (11th Cir. 1995). "It is only when the claimant can clearly do unlimited types of work . . . that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy." Allen v. Sullivan, 880 F.2d 1200, 1202 (11th Cir. 1989) (citation omitted). Exclusive reliance upon the grids is not appropriate when claimant has a nonexertional impairment that significantly limits his basic work activities. Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990).

When the ALJ uses a vocational expert, he elicits responses from the expert by posing hypothetical questions to him or her. Phillips, 357 F.3d at 1240. In order for the expert's testimony to constitute substantial evidence to support the ALJ's findings with regard to this point, the ALJ must pose a hypothetical which includes all of a claimant's impairments. Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999). However, the ALJ is only required to pose those limitations he finds severe in the hypothetical to the expert. Pendley v. Heckler, 767 F.2d 1561, 1563 (11th Cir. 1985). The ALJ is not required to include in his hypothetical any medical conditions which are controlled by medication. McSwain v. Bowen, 814 F.2d 617, 619-20 (11th Cir. 1987).

Plaintiff contends that the ALJ should have included in his hypothetical that she was

moderately limited in her ability to perform activities within a schedule, maintain regular attendance, and be punctual, and complete a regular workweek and workday. According to Plaintiff, she would be unable to work more than a day or two a week.

Actually, Plaintiff's attorney asked the vocational expert if there were any jobs which she could perform if she missed work several days a week, and the expert responded that this would preclude any employment. (R. 772-773). Plaintiff testified at the hearing that if she worked she would call in sick two or three days a week because of her limitations. (R. 767). However, the ALJ explained why she found Plaintiff's self-described limitations less than fully credible. (R. 20-21). The ALJ found no support in the record for severe back pain, citing objective tests which showed mild degenerative changes, abnormal curvature, and otherwise normal findings. (R. 19-20). The ALJ noted that many of her complaints of abdominal and other such pain were caused by alcohol abuse, and her complaints of fibroid tumors, headaches and black outs were unsubstantiated by any number of tests performed on her, and may have been caused as well by her alcohol abuse and or lack of compliance with medication regimens. (R. 21). He cited, too, her lack of consistent or traditional mental health treatment provided by a psychiatrist or psychologist, as supporting his finding that no severe limitations were imposed by her depression or post-traumatic stress disorder. (R. 21). The fact that Claimant sought no medical treatment for her mental problems until 2 ½ years after her onset date militates against a finding of severity of these alleged impairments. See Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000); Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997). Although Dr. Dalton, a one-time examiner, believed her to be severely impaired mentally in her ability to work with others and function socially, she based her findings on past traumas which occurred prior to the only successful and

relevant work Plaintiff had done working as a housekeeper in 2003.  When a claimant has worked with an impairment, the ALJ may properly consider the condition not disabling, absent a showing that the condition had significantly deteriorated.  Orrick v. Sullivan, 966 F.2d 368, 370 (8th Cir. 1992); Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992).  See also Villarreal v. Apfel, 2000 WL 1135547 (S.D. Ala. 2000) (where plaintiff worked full time for 15 years with pain following her surgery, this history is at odds with her claim that she suddenly became disabled by this pain on the date she quit her job). Further, she did not keep appointments or otherwise adhere to the treatment prescribed by the mental health clinic that may have helped resolve these issues.  (See R. 21).   A  medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling.  Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988).  She claims disability because of problems related to hepatitis and gynecological issues, but was told repeatedly that she would have to stay sober for a period of time before the treatments could be attempted and that surgery for the fibroid tumors would have to be completed before the interferon treatments could begin. Plaintiff has apparently not taken the necessary actions set out for her that may remedy these conditions

The record also supports the ALJ's findings regarding her credibility about the level of severity of her pain and limitation.  One consultative examiner, Dr. Davey, clearly found her to be exaggerating her symptoms and acting in a manner inconsistent with her allegations, i.e. walking in "little hops" around the room and unable to turn her head when asked, but able to look around when not being examined.  Further, although Plaintiff claims that her conditions prevent her from completing a workweek or otherwise maintaining employment, her earnings record shows that she has never worked consistently with years in between employment long

before her alleged onset date. This factor, too, goes to her credibility. See Comstock v. Chater, 91 F.3d 1143, 1147 (8th Cir. 1996) (ALJ may properly discount a disability claimant's credibility when there are scant earnings and significant breaks in employment).

Thus, the medical record supported a finding of ability to perform light exertional levels, limited by an inability to perform complex or detailed work, and not her self-described severely limiting complaints that she could not complete a full work week because of her back pain and depression related problems.

Accordingly, it is

**ORDERED AND ADJUDGED:**

That the decision of the Commissioner is AFFIRMED.

**DONE AND ORDERED** this  *28th* day of July, 2010

*s/Maurice M. Paul*
Maurice M. Paul, Senior District Judge